134 Ga. App. 618 (1975)
215 S.E.2d 318
EXECUTIVE DEVELOPMENT PROPERTIES, INC.
v.
ANDREWS PLUMBING COMPANY.
50314.
Court of Appeals of Georgia.
Argued February 25, 1975.
Decided April 11, 1975.
Rehearing Denied April 24, 1975.
George N. Skene, for appellant.
Jones, Cork, Miller & Benton, Carr G. Dodson, G. Boone Smith, III, for appellee.
STOLZ, Judge.
In this action by a prime contractor against its plumbing subcontractor to recover for fire damage to a building under construction by the plaintiff, caused by the defendant's alleged negligent use of a torch, the showing on the defendant's motion for summary judgment was substantially as follows:
The contract between the parties provided in relevant part as follows: Article 9: "Prior to starting work the required insurance shall be obtained from a responsible insurer, and satisfactory evidence shall be furnished to the Contractor that the Subcontractor has complied with the requirements of this Article 9. The Contractor and Subcontractor waive all rights against each other and against the Owner and all other Subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided under the General Conditions, except such rights as they may have to the proceeds of such insurance. (Here insert any insurance requirements and Subcontractor's responsibility for obtaining, maintaining and paying for necessary insurance, not less than limits as may be specified in the Contract Documents or required by law. This to include fire insurance and extended coverage, consideration of public liability, property damage, employer's liability, and workmen's compensation insurance for the Subcontractor and his employees. The insertion should cover provisions for notice of cancellation, allocation of insurance proceeds and other aspects of insurance.) Contractor shall not be responsible for workmans [sic] compansation [sic], disability, or other hazard insurance covering subcontractor and his employees. Subcontractor shall be responsible for maintenance of proper insurance." (Emphases supplied.) Article 11.5: "In carrying out his Work the Subcontractor shall take necessary precautions to protect properly the finished work of other trades from damage caused by his operations." Article 11.7: "The Subcontractor shall take all reasonable safety precautions with respect to his *619 Work, shall comply with all safety measures initiated by the Contractor and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property in accordance with the requirements of the Contract Documents..." Article 11.10: "The Subcontractor agrees that if he should neglect to prosecute the Work diligently and properly or fail to perform any provisions of this Subcontract, the Contractor, after three days' written notice to the Subcontractor, may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due the subcontractor, provided, however, that if such action is based upon faulty workmanship or materials and equipment, the Architect shall first have determined that the workmanship or materials and equipment are not in accordance with the Contract Documents." (Emphases supplied.) Article 11.20: "The Subcontractor shall indemnify and hold harmless the Contractor and all of his agents, and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the Subcontractor's Work under the Contract Documents, provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirecently [sic] employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder ..." (Emphases supplied.) In answer to the defendant's interrogatories, the plaintiff disclosed that its insurer (General Insurance Co. of America) had indemnified it for the full amount of the loss here sued for. In response to the defendant's interrogatory 5, "Please state whether or not the insurance company which paid and insured the plaintiff is bringing plaintiff's complaint under loan receipt and subrogation contract" (emphasis supplied), the plaintiff answered, "Yes."
The plaintiff appeals from the grant of the *620 defendant's motion for summary judgment.
1. We reverse. At the most, the provisions of the contract quoted hereinabove, construed together, require the construction that the subcontractor had the contractual obligation to maintain the "necessary" and "proper" insurance to protect the contractor from loss due to the negligence of the subcontractor and its agents, that the subcontractor would indemnify the contractor for such losses, and that the waiver of the contractor's rights against the subcontractor for fire damages was only to the extent that they were covered by property insurance provided by the subcontractor, as required by the contract. At the least, these provisions were subject to this construction. The showing here is that the subcontractor either did not maintain the property insurance as it was contractually bound to do, or that, if so, its insurer did not indemnify the plaintiff prime contractor for the loss. This being the case, the plaintiff was forced to obtain indemnity from its own insurer, which it did. The defendant, not having fulfilled its responsibility of providing indemnification to the plaintiff, can not now defend against the plaintiff's action for indemnification by relying on a construction of the contract under which the plaintiff waived its rights for indemnification even where the plaintiff had to be indemnified by its own insurer. Such a construction would have the effect of denying to the plaintiffs insurer its valuable right of subrogation to the plaintiff's claim against the defendant. The summary judgment was improperly granted, therefore, for the reason that it does not appear as a matter of law that a recovery is barred against the defendant by the proper party plaintiff.
2. The grant of summary judgment was erroneous for another reason. The fact that the plaintiff has been indemnified does not of itself bar the action against the defendant. The plaintiff could have either accepted payment from its insurer as a loan, giving the insurer a loan receipt (in which case the action would proceed in the name of the plaintiff, but would be in effect for the use of its insured) or it could have accepted a settlement from its insurer, assigning its right of action against the defendant to its (plaintiff's) insurer, thereby subrogating *621 the insurer to the plaintiffs right of recovery (in which case the plaintiffs insurer would be the proper party plaintiff). See Hartford Fire Ins. Co. v. Davis, 29 Ga. App. 797 (1) (116 SE 647); McCann v. Dixie Lake &c. Co., 44 Ga. App. 700 (162 SE 869); Employers' Liab. Assur. Corp. v. Keelin, 132 Ga. App. 459, 460 (1) (208 SE2d 328).
Hence, interrogatory No. 5, quoted in the statement of facts hereinabove, was inaccurately phrased in the conjunctive, whereas it should have been phrased in the disjunctive, i.e., "under loan receipt or subrogation contract." The affirmative response, therefore, did not answer the critical question of whether the plaintiff contractor was the proper party plaintiff under a loan receipt or whether its insurer would be the proper party plaintiff under a subrogation contract. There being no other showing as to whether there was a proper party plaintiff, this remains as a genuine issue of material fact to be developed in the trial court.
Judgment reversed. Deen, P. J., and Evans, J., concur.