## 60892. AMERICAN CHAIN & CABLE COMPANY, INC. v. BRUNSON et al.

SOGNIER, Judge.

Appellee Brunson was injured when an elevator in which he was a passenger fell from the upper floor of Maloof's Department Store to the lower floor. In three separate lawsuits, Brunson and his wife sued the owner, Maloof, the installer of the elevator, Divine, the builder of the department store, Prince, the manufacturer, American Chain and Cable, and the seller, Tull Equipment & Supply Co.

The Brunsons executed two settlement agreements. The first agreement provided for an interest free loan from Maloof and his insurance carrier to the Brunsons in the amount of $40,000 in exchange for a covenant not to sue. The second agreement was between the Brunsons and Divine and Prince (and their respective insurance carriers) and provided for an interest free loan of $25,000 to the Brunsons in exchange for a covenant not to sue. The agreements are similar in content, the agreement with Maloof being incorporated by reference in the agreement with Prince and Divine, which provides for (1) a covenant not to sue Maloof, Divine and Prince; (2) an agreement to repay the loans only out of the proceeds of any judgment or settlement obtained from appellants; (3) a pledge of these inchoate funds to Maloof, Divine and Prince as security; (4) an agreement to indemnify and hold harmless Maloof, Divine and Prince in the event that appellants attempt to obtain contribution or indemnity from them; and (5) an agreement to execute a full release following the end of litigation. The first $130,000 to be recovered from the manufacturer and seller would be divided equally between the Brunsons and Maloof, Prince and Divine. The Brunsons dismissed their suits against all the defendants and refiled their claim against American Chain and Tull. These defendants filed a motion for summary judgment which was denied. The trial judge granted appellants' motion for a certificate of immediate review, and this court granted their application for interlocutory appeal.

The use of a "loan receipt" executed by a plaintiff in favor of defendant joint tortfeasors in exchange for an agreement not to sue said joint tortfeasors on a personal injury claim presents a question of first impression in the appellate courts of Georgia.

Appellants contend that the agreements entered into by appellees and defendants Maloof, Divine and Prince operated as a release, thereby releasing appellants as joint tortfeasors. Appellee contends that the agreements are covenants not to sue and do not bar an action against other joint tortfeasors. While neither party has directly addressed the issues involved in the use of a "loan receipt" in

the context of this case, we have not found that such agreements between plaintiffs and joint tortfeasor defendants have been approved by the Georgia courts. Therefore, a full discussion is necessary, as we cannot, by ignoring such issues, give tacit approval of the use of such a device under the circumstances of this case.

Historically, the loan receipt arose out of a commercial setting involving shippers and carriers. The purpose of the loan receipt agreement was to supply the shipper promptly with money from his insurer to the extent of compensation to which the insured was entitled as a result of property loss suffered, and to preserve to the insurer the claim against the carrier to which the insurer would become subrogated upon payment by them for the loss. The Supreme Court of the United States approved such an agreement as a means of obtaining "prompt settlement for loss (which is essential to actual indemnity and demanded in the interest of commerce)." Luckenbach v. McCahan Sugar Ref. Co., 248 U. S. 139, 146 (39 SC 53, 63 LE 170) (1918).

In Georgia, the usual circumstances under which a loan receipt is executed involve a loan to an insured by his insurer for property damages resulting from a tortious act by a third party. *McCann v. Dixie Lake &c. Co.,* 44 Ga. App. 700 (162 SE 869) (1931); *Service Fire Ins. Co. v. Powell,* 70 Ga. App. 213 (27 SE2d 896) (1943); *Green v. Johns,* 86 Ga. App. 646 (72 SE2d 78) (1952); *Clark v. American Cas. Co.,* 96 Ga. App. 328 (99 SE2d 897) (1957); *Lowance v. Dempsey,* 99 Ga. App. 592 (109 SE2d 318) (1959); *Coleman v. State Farm &c. Inc. Co.,* 104 Ga. App. 328 (121 SE2d 833) (1961); *Kirkendohl v. State Farm Mutual &c. Co.,* 104 Ga. App. 834 (122 SE2d 922) (1961); *State Farm Mut. &c. v. Barnard,* 115 Ga. App. 857 (156 SE2d 148) (1967); *Pharo v. Travelers Ins. Co.,* 119 Ga. App. 344 (167 SE2d 226) (1969); *Hall v. Helms,* 150 Ga. App. 257 (257 SE2d 349) (1979). The loan receipt in such cases arises out of a policy of insurance which provides the insured with protection against damage to his property. It permits the insured to recover for the property loss, and sue the tortfeasor *in his own name.* Thus, the loan receipt is a valid method of keeping the insurance company out of the litigation as a party. In such a case the insured is the proper plaintiff. *United States Fire Ins. Co. v. Farris,* 146 Ga. App. 177, 178 (245 SE2d 868) (1978).

One must remember in such cases that a contractual relationship exists between the insurer and the insured which would pre-date any tort committed against the insured. In addition, the cases involve property damage as opposed to personal injury claims. As cited above, our courts have upheld the loan receipt in the context of an insured and his own insurer, and have held that such a loan receipt does not constitute an assignment of the insured's cause of

action, *McCann v. Dixie Lake &c. Co.,* supra; *Southeast Transport v. Hogan Livestock,* 133 Ga. App. 825, 827 (212 SE2d 638) (1975).

The loan receipt agreement between an insured and insurer creates a legal fiction where, for the convenience of the insured, the insurer advances money which, if the insured were not successful in his claim against the tortfeasor, the insurer would be liable to pay under the insurance policy. Our courts have approved this legal fiction and permitted the insured to prosecute his claim in his own name, to the advantage of both the insured and insurer. (See citations above.) However, this court has recognized that "the action would proceed in the name of the plaintiff, but would be in effect for the use of its insured." *Executive Dev. Prop. v. Andrews Plumbing Co.,* 134 Ga. App. 618, 620 (215 SE2d 318) (1975). Judge (now Justice) Marshall, in *Southeast Transport v. Hogan Livestock,* supra at 827, reluctantly held that a loan receipt was not an assignment and that an insurer advancing money to cover a loss under an insurance policy is not required as a party in a suit between the insured and a third party tortfeasor.

The instant case presents an entirely different situation. Here, the parties to the agreement have no prior contractual relationship. The loan receipt is a device whereby some of the defendant joint tortfeasors agree to advance money to the plaintiff in exchange for a covenant not to sue, and at the same time such defendants retain an interest in the plaintiff's cause of action against the remaining defendant joint tortfeasors. Under these circumstances we must determine whether recognition of the legal fiction should permit the loan receipt to be validated.

In Georgia, assignment of a personal injury claim is not permitted. Code Ann. § 85-1805; *James v. Emmco Ins. Co.,* 71 Ga. App. 196, 200 (30 SE2d 361) (1944). While we do not view the instant loan receipt to be an assignment per se of plaintiff's personal injury claim to Maloof, Divine and Prince, we think that such a device is an attempt to do indirectly what the law will not permit directly.

Under the usual circumstances involving a loan receipt, commercial necessity permits the insurance company to promptly pay an insured's claim and at the same time, protect its interest in the subrogated claim. The cases cited, supra, involve claims for property damage. Code Ann. § 85-1805 provides that a "right of action is assignable if it involves, directly or indirectly, a right of property..." In the instant case, we find no compelling reason to permit contravention of the statutory prohibition against assignment of a personal injury claim. The situation is not analogous to the subrogation involved when payment is made by an insurer to its insured.

It is not the *name* one gives to a transaction, but the substance, which is material and which must be inspected and analyzed to determine its validity. Regardless of what the transaction is called, it cannot be upheld if it is prohibited by statute. *Flood v. Empire Invest. Co.,* 35 Ga. App. 266, 270 (133 SE 60) (1926). " 'A court of justice will not lend its aid to the enforcement of any contract the making of which is prohibited, nor to the enforcement of anything necessary to complete the accomplishment of an unlawful purpose ...' " *Jones v. Faulkner,* 101 Ga. App. 547, 548 (114 SE2d 542) (1960).

Dollar v. Long Mfg., 561 F2d 613, 619 (5th Cir. 1977) is a federal case arising in Georgia which presents a situation similar to the case at bar. In Dollar, the plaintiffs argued that the trial court erred in submitting to the jury, as evidence of a release, an agreement entered into between the plaintiff and a dealer and manufacturer and their insurance carrier. The agreement included an interest-free loan to the plaintiff to be repaid only from the proceeds of the plaintiff's litigation against Long, in exchange for a forbearance to sue the parties to the agreement. Judge Hill found that the agreement constituted a covenant not to sue and not a release. He also found, however, that the trial court erred in admitting the documents (including a check for the amount of the loan) into evidence for the jury's consideration in interpreting the contract. While we agree with Judge Hill's reasoning that the interpretation of a contract is for the court and not the jury, and we agree that the agreements in question should have been regarded as covenants not to sue, we do not agree that the loan receipts should have been excluded as evidence. We do not agree with Judge Hill's tacit recognition of such a device as a means of settlement.

Our sister states have dealt with loan receipts as settlement agreements between plaintiffs and defendant tortfeasors in a variety of ways. In Reese v. Chicago, Burlington & Quincy R. Co., 55 Ill2d 356 (303 NE2d 382) (1973), the Supreme Court of Illinois recognized the loan receipt as valid and held that considerations favoring private settlement of lawsuits warranted approval of such arrangements. However, the dissenting opinion in Reese points out that such a loan receipt arrangement seriously undermines the long-standing doctrine that prohibits the assignment of a cause of action for personal injuries. The dissenting judge went on to state that while "[a] plaintiff is allowed to select the defendants whom he will sue ... the law should not permit that choice to be influenced by a payment received from one defendant which is designed to operate as an inducement to the plaintiff to join in a pursuit of the other defendants, to the advantage of both of the pursuing parties." Reese,

supra, at 388. In addition, the loan agreement has the unwholesome effect of tending to throw the entire loss on one party, since the party offering the loan agreement quite possibly could escape liability altogether. We agree with the dissenting opinion in Reese; we fail to see how such an arrangement promotes the public interest.

Other cases involving loan receipt arrangements in situations similar to the instant case include: Crocker v. New England Power Co., 348 Mass. 159 (202 NE2d 793), (1964) (Held loan receipt valid where tortfeasors' negligence resulted in property damage to plaintiff); American Transport Co. v. Central Indiana R. Co., 255 Ind. 319 (264 NE2d 64) (1970) (Held loan receipt agreement did not constitute partial payment or partial satisfaction of judgment). But see, Bolton v. Ziegler, 111 FSupp. 516, N. D. Iowa (1953) (Loan receipt permitted as covenant not to sue but sums received applied *pro tanto* toward reduction of plaintiff's recovery); Tober v. Hampton, 178 Neb. 858 (136 NW2d 194) (1965) (Loan receipt constituted assignment of claim involving property damage); Cullen v. Atchison, Topeka & Santa Fe R. Co., 211 Kan. 368 (507 P2d 353) (1973) (Loan receipt agreement ineffective but held to be valid as covenant not to sue); Biven v. Charlie's Hobby Shop, Ky., 500 SW2d 597 (1973) (Held loan receipt agreement constituted partial release).

We adopt the holding of those of our sister states which provides that a loan receipt agreement between a plaintiff and a joint tortfeasor in exchange for a forbearance to sue is an absolute payment and not a loan. As such, we hold that the agreement in the case sub judice constitutes a covenant not to sue and not a release. "While Code Ann. § 20-909 provides that a covenant never to sue is equivalent to a release, this statute applies to the parties with whom the covenant is made and not to another tortfeasor. A covenant not to sue one tortfeasor will not bar actions against another tortfeasor. (Cits.)" *Ford Motor Co. v. Lee,* 137 Ga. App. 486, 490 (224 SE2d 168) (1976), revd. on other grounds, 237 Ga. 554 (229 SE2d 379) (1976). It is evident from the agreements themselves that no release was intended and that the agreements are covenants not to sue Maloof, Prince and Divine. Anything received by way of such covenants not to sue operates as a payment *pro tanto* upon any judgment obtained against appellant. *Atlantic C. L. R. Co. v. Ouzts,* 82 Ga. App. 36, 59 (60 SE2d 770) (1950); *Ford Motor Co. v. Lee,* supra, at 237 Ga. 554, 556; *City Express Service v. Rich's, Inc.,* 148 Ga. App. 123, 125 (250 SE2d 867) (1978).

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MARCH 10, 1981 —

*Bruce H. Beerman, Warren C. Fortson,* for appellant.

*William C. Lanham, Clark H. McGehee, Thomas William Malone, Kevin B. Buice, N. Forrest Montet, Richard Hodge,* for appellees.