**Nancy P. COOPER, individually and as administratrix of the estate of Ronald W. Cooper, Plaintiff,**

v.

**FIRESTONE TIRE AND RUBBER COMPANY, et al., Defendants.**

**Civ. A. No. CV282–19.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Nov. 29, 1984.

Randall A. Jordan, Brunswick, Ga., Austin Catts, Atlanta, Ga., for plaintiff.

Gary W. Hatch, Atlanta, Ga., for Firestone Tire and Rubber Co.

Ron Reemsnyder, Atlanta, Ga., for The Coats Co.

Wallace E. Harrell, Brunswick, Ga., for Volkswagen of America.

Albert Fendig, Brunswick, Ga., for Champion Pneumatic Machinery Co.

Joseph H. Ferrier, Brunswick, Ga., for John Huskey.

## ORDER

VINING, District Judge.

On March 19, 1983, The Coats Company moved to dismiss the plaintiff's claims against it on the basis that agreements entered into between the plaintiff and certain other defendants constituted releases and that by entering into such releases, the plaintiff had also released Coats. Defendant John Huskey also joined in the motion. Over the next few days the court heard argument from counsel and in an oral statement indicated that it would grant the motion but would delay entering a written order until such time as counsel had been given an opportunity to further brief the issues involved. The court heard additional argument in Atlanta on April 20 with respect to the motion. Although the court had indicated that it was inclined to grant the motion, no final ruling or written order has been entered, and this order will constitute the court's ruling with respect to Coats' and Huskey's motion to dismiss.

## I. FACTUAL BACKGROUND

This is a wrongful death action brought by Nancy Cooper, the widow of Ronald Cooper, who was killed at the Federal Law Enforcement Training Center in Brunswick, Georgia, on June 9, 1981. The plaintiff alleges that John Huskey had mounted a Firestone tire on a Volkswagen rim through the use of a Coats 1010 Super Powerman tire mounting machine, which was fed by an Ingersoll-Rand air compressor. The tire later blew off the mounting machine, striking Mr. Cooper in the face and killing him.

Shortly before trial, the plaintiff settled her claims against Ingersoll-Rand pursuant to an agreement reached between her counsel and its counsel. The material terms of the agreement were that the plaintiff would execute a covenant not to sue in favor of Ingersoll-Rand, that she would be free to continue to pursue her cause of action against the remaining defendants, that she would accept the sum of $15,000 in consideration of her execution of the covenant, that she would indemnify Ingersoll-Rand to the extent of the amount paid to her, and that she would discontinue her action against Ingersoll-Rand. The plaintiff's counsel prepared a draft of the covenant not to sue and sent a copy to counsel for Ingersoll-Rand. The agreement was not immediately executed, since both parties agreed that the language needed to be refined.

On the Friday evening before trial was to begin the following Monday, the plaintiff reached similar agreements with Firestone and Volkswagen. The court was informed on Saturday of the settlements, and phone calls were made to the remaining defendants informing them that the plaintiff had settled her claims with Ingersoll-Rand, Volkswagen, and Firestone. On Monday morning the court met with counsel in chambers and discussed the settlements and how the case would proceed to trial. The court cautioned counsel to be sure that the documents drawn were covenants not to sue, not releases, so that the plaintiff would be able to proceed with her claim against the remaining alleged joint tortfeasors. The court directed counsel to produce the documents to counsel to Coats and Mr. Huskey later that day. After reviewing the documents, Coats moved to dismiss the plaintiffs' claims against it on the ground that the documents were releases, not covenants, and that the dismissal with prejudice of the plaintiff's claims against Ingersoll-Rand, Firestone, and Volkswagen operated as a bar to the plaintiff's claims against Coats; counsel for Mr. Huskey joined in this motion. All of the documents are substantially the same, the only difference being that different monetary amounts are recited and, of course, different defendants are mentioned in each of the documents.

In stating that it was inclined to believe the documents as drawn were releases, not covenants not to sue, the court recognized that the documents were denominated as covenants not to sue and contained the language, "It is expressly agreed and understood by the parties hereto that this Agreement IS NOT A RELEASE, is not intended by them to be a RELEASE, and shall not operate to release any alleged tort feasor in this claim. This Agreement is to be construed under the Laws of Georgia and of the United States as they apply to covenants not to sue." Nevertheless, the court was concerned with the language in the documents wherein the parties agree that in consideration of the payment of certain funds "to the claimant for the wrongful death, funeral expenses, burial expenses, and all other claims or expenses arising from, after, and prior to the death of Ronald W. Cooper," the plaintiff did "covenant and agree that she will not individually or jointly institute any further proceedings of any kind against" the settling defendants; the documents further provided that the plaintiff "specifically covenants and agrees to voluntarily dismiss with prejudice her pending claim against" the settling defendants.

## II. LEGAL ANALYSIS

It is basic to tort law that a plaintiff is entitled to only one satisfaction; consequently, if the plaintiff obtains a judgment against several tortfeasors, he may proceed to collect that judgment against one or all of the joint tortfeasors. However, if he chooses to obtain full satisfaction from one of the joint tortfeasors, he may not proceed to collect additional funds from the other joint tortfeasors. This principal and the rationale for it was set out in *Donaldson v. Carmichael*, 102 Ga. 40, 42, 29 S.E. 135 (1897):

The universal and cardinal principal is, that the person injured shall receive a compensation commensurate with his loss or injury, and no more.... The cause of action is the *damage* occasioned by the wrongful or negligent act of the defendant; if the act be done without damage, there is no injury to compensate; hence there can be no recovery. If there was damage by such act and the amount of such damage has been agreed on and paid, then it has been compensated. Although one be damaged by the joint act of two persons, there is but one injury; and if that is satisfied, the party injured is placed in as near as his normal condition as the law can place him. There can be no double recovery of the amount of damage which one has sustained. It would be as reasonable to ask to recover from one defendant twice the amount of the damage sustained, as it is to ask for each of two defendants payment of the full amount of such damage

even when the cause of action is good against both. The plaintiff is entitled to only satisfaction; and if the manner of releasing one involves satisfaction in whole or in part of the claim, it will enure to the discharge, pro tanto, of all who are liable...; and if a party injured accepts satisfaction from one of several joint tort-feasors, that is a bar as to all. This principle was strictly applied and was interpreted to mean that even though the plaintiff may not have received full compensation for his injury if he fully settled his claim against one joint tortfeasor, the claim was extinguished as to the other joint tortfeasor. *Griffin Hoisery Mills v. United Hoisery Mills*, 31 Ga.App. 450, 120 S.E. 789 (1923).

To relieve the harsh strictures of this principle, the courts began to give effect to covenants not to sue. The courts began to modify their strict application of the release principle and held that if a plaintiff sought to settle his claim against one joint tortfeasor by accepting less than full satisfaction for his injury, he could still proceed against the other joint tortfeasors by entering into a covenant not to sue the settling joint tortfeasor; by covenanting not to sue, the plaintiff did not actually release his claim against that joint tortfeasor, which release would have meant a release of the other joint tortfeasors.

> The primary consideration in the construction of such instruments is whether they show an intention on the part of the injured party to acknowledge a full satisfaction of his damage and injury, and so to relinquish the cause of action and extinguish the liability of all the persons involved in causing the damage, or whether they show an intention only to accept a satisfaction of a part of the claim. And the intention of the parties, as shown by the instrument, will be given effect regardless of what the parties may call the instrument.
>
> *Harmon v. Givens*, 88 Ga.App. 629, 634, 77 S.E.2d 223 (1953).

Although the Georgia courts routinely spoke about giving effect to "the intent of the parties," it was not the subjective intent of the parties, but the objective intent as derived from the documents themselves, that the courts looked to. Consequently, even though a document may have been denominated a release, if it appeared from the language contained in the document that the parties intended it to be a covenant not to sue, discharging only one tortfeasor, the court would interpret the document as being a covenant not to sue instead of being a release. *Smallwood v. Bickers*, 139 Ga.App. 720, 229 S.E.2d 525 (1976). However, this court has found no case wherein a document described by its terms to be a covenant not to sue was treated as a release. *Weems v. Freeman*, 234 Ga. 575, 216 S.E.2d 774 (1975) is not such a case since *Weems* involved a covenant not to enforce judgment, which is different from a covenant not to sue. In *Weems* the court simply held that a plaintiff could not enter into an oral agreement with some of the defendants during trial, which they termed a covenant not to sue, wherein the parties agreed that the suit would continue and that if a verdict were rendered against all defendants, the defendants who had not settled would be liable for only one-third of the damages. The court held that it was "a nonsequitur to claim that there is a covenant not to sue and yet at the same time continue the action against those who are parties to the agreement. This type settlement is in reality an agreement not to enforce the judgment against any defendant who is a party to the agreement." 234 Ga. at 576–77, 216 S.E.2d 774. The court simply applied the long standing law: "Where there is a covenant not to sue, it is important that the parties to the covenant not be sued in fact or in fiction after the agreement has been executed. Otherwise, the substance of the agreement will be construed to be a release from judgment and will act to release all joint tortfeasors." 234 Ga. at 577, 216 S.E.2d 774.

A review of the numerous cases wherein the courts are asked to decide whether a particular document is a release or a covenant, shows a clear propinsity on the part of the Georgia appellate courts to modify

the harsh principle set forth in *Powell v. Davis*, 60 Ga. 70 (1878), and *Donaldson v. Carmichael*, 102 Ga. 40, 29 S.E. 135 (1897), and to treat a document as a covenant not to sue instead of a release whenever possible. *Smallwood v. Bickers*, 139 Ga.App. 720, 229 S.E.2d 525 (1976); *Doster v. C.V. Nalley, Inc.*, 95 Ga.App. 862, 99 S.E.2d 432 (1957) (involving a "release" of future or contingent claims).

To permit a plaintiff to settle with one tortfeasor without extinguishing his claim against the other tortfeasors, the Georgia courts have subdivided joint tortfeasors into two categories: concurrent joint tortfeasors and successive joint tortfeasors. In the first category, the release of one joint tortfeasor releases the others as well; however, in the case of successive tortfeasors, a plaintiff may execute a general release as to the original tortfeasor but still sue for injuries sustained because of the conduct of the successive tortfeasor. *Williams v. Physicians and Surgeons Community Hospital, Inc.*, 249 Ga. 588, 589, 292 S.E.2d 705 (1982), overruling *Maxey v. Hospital Authority of Gwinnett County*, 245 Ga. 480, 265 S.E.2d 779 (1980) and *Knight v. Lowery*, 228 Ga. 452, 185 S.E.2d 915 (1971).

In *Williams* the court also held that parol evidence could be used to ascertain the true intention of the parties to the release with regard to those persons who were to be bound or covered by the release, overruling a contrary holding in *Maxey*. *See also Sims v. Bryan*, 140 Ga.App. 69, 230 S.E.2d 39 (1976). By this ruling the Georgia Supreme Court retreated from its earlier rulings that the objective, not subjective, intent of the parties was controlling and that such intent should be inferred from the four corners of the document whenever possible.

Perhaps the best example of how far the Georgia Court of Appeals will go in giving effect to the subjective intent of the parties not to release joint tortfeasors by settling with one joint tortfeasor is *Smallwood v. Bickers*, 139 Ga.App. 720, 229 S.E.2d 525 (1976). This court has reviewed the settle-ment document in that case and notes that it was denominated as a "release and settlement agreement." That document specifically stated:

> It is hereby expressly understood and covenanted that this instrument is intended to *release and discharge the afore-named releasees from any and all claims, actions, or causes of action of any sort or description of which the undersigned, or Isaac Littleton Smallwood, or this estate or Isaac Littleton Smallwood or any or all of them may have against the afore-referenced releases*, but expressly does not release any other persons, firms, corporations or other legal entities except those expressly referred to herein.... (Emphasis added.)

That document also stated, "The parties do acknowledge, however, that payment in full for all damages caused by the named releases has been made by this settlement." Practically ignoring this language, which released the settling defendants and acknowledged payment in full for all damages caused by the releasees (which had to be a settlement of the full claim, since the defendants were concurrent joint tortfeasors, not successive tortfeasors), the court instead focused on the language contained in the agreement to the effect that the plaintiff did not intend to release non-settling defendants. The court focused upon the following sentence, which immediately preceded the sentence quoted above regarding full settlement:

> By entering into this Agreement, the parties acknowledge that all damages suffered by the undersigned, and by the estate of the deceased, have not been paid in full, but that this Agreement constitutes the settlement and resolution of a doubtful claim against the within named releasees only in regard to the injuries and death of Isaac Littleton Smallwood as such may have been caused by the named releasees.

Instead of seeking to harmonize the language which acknowledged "payment in full for all damages" with the language

stating that the damages suffered by the plaintiff "have not been paid in full," the court simply ignored the former and emphasized the latter.

*Bevill v. North Brothers Company*, 168 Ga.App. 97, 308 S.E.2d 215 (1983), provides a good discussion of the difference between a covenant not to sue and a covenant not to enforce judgment. The *Bevill* court noted:

> If a defendant has secured an agreement whereby he is not to be sued, he certainly should not thereafter be sued to judgment. If he is sued to judgment, then regardless of what it is denominated, the agreement definitely cannot be a covenant "not to sue." It must instead be an agreement "not to enforce the judgment" which is subsequently rendered in the case. *If the agreement is one "not to enforce a judgment" rather than a covenant "not to sue," all defendants who would otherwise be jointly liable on the judgment are released thereby.* 168 Ga.App. at 100, 308 S.E.2d 215 (emphasis added).

However, apparently because it desperately wanted to find a covenant not to sue rather than a release, the *Smallwood v. Bickers* court chose not to utilize this analysis of the effects of a covenant not to enforce judgment, for the document in *Smallwood* expressly provided:

> This instrument shall be interpreted as a covenant not to sue and a covenant not to enforce judgment with respect to all claims for the full value of the life of Isaac Littleton Smallwood and for all actions for funeral expenses, aggravation by third party of original injuries sustained by said deceased, and for all claims of loss of consortium after the death of said Isaac Littleton Smallwood against such named releasees.

██ The court interprets the above cases to mean that whenever possible the Georgia appellate courts will treat a settling document as a covenant not to sue if there is language in the document which the court can interpret to show an intention on the parties to release only one joint tortfeasor and not the remaining joint tort-

feasors. In the case *sub judice*, there are repeated references to the fact that the parties intend for the document to be a covenant not to sue and that the parties intend to release only the settling defendants and to pursue their cause of action against the non-settling defendants. Consequently, this court will treat the document as a covenant not to sue, not a release.

██ The fact that the covenant not to sue was accompanied with a dismissal with prejudice of the plaintiff's cause of action against the settling defendant does not convert the covenant not to sue into a release that would release the non-settling defendants. "The dismissal of an action against a defendant with prejudice even when a consideration is paid by such defendant to the dismissing party, does not, as a matter of law, adjudicate all issues in the case. Such a dismissal merely means that the same plaintiff cannot sue the same defendant on that same cause of action. The dismissal of an action with prejudice against a defendant adjudicates only the non-liability of that defendant to the plaintiff.... A dismissal with one defendant does not preclude the same defendant from bringing the same cause of action against another defendant." *Rowland v. Vickers*, 233 Ga. 67, 68, 209 S.E.2d 592 (1974). Although *Rowland* did not involve joint tortfeasors, the language is instructive, since it holds that a dismissal with prejudice is simply an adjudication of non-liability of the dismissed defendant and is not an adjudication that a plaintiff has received full compensation for his injury. *Smith v. McLendon*, 142 Ga.App. 608, 236 S.E.2d 692 (1977) and *Cline v. Aetna Casualty & Surety Co.*, 137 Ga.App. 76, 223 S.E.2d 14 (1975), do not require a contrary result, since there is nothing in those two cases to reflect that the compensation received was not intended to be a full satisfaction of the claims. This court does not hold that the settling of a claim with one joint tortfeasor accompanied with a dismissal with prejudice will never work to release the non-settling joint tortfeasor; this court simply holds that a

dismissal with prejudice accompanied by a covenant not to sue, which clearly shows the intention of the parties not to release the non-settling joint tortfeasors, will not operate to extinguish the plaintiff's claims against the non-settling joint tortfeasors.

For the foregoing reasons the motion of the Coats Company and John Huskey to dismiss the plaintiff's claims against them is DENIED.