In re WORLD BAZAAR FRANCHISE CORPORATION a/k/a World Bazaar, Debtor.

WORLD BAZAAR FRANCHISE CORPORATION a/k/a World Bazaar, Plaintiff,

v.

CCC ASSOCIATES CO., INC., Defendant.

Bankruptcy No. A92–65847–SWC.
Adv. No. 93–6343.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 18, 1994.

James C. Cifelli, Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.A., Atlanta, GA, for debtor/plaintiff.

Eric A. Szweda, Troutman Sanders, Atlanta, GA, for defendant.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is a motion for summary judgment filed by defendant CCC Associates Co., Inc. ("CCC"). In the underlying complaint, World Bazaar Franchise Corporation a/k/a World Bazaar ("debtor") seeks to avoid and recover a preferential transfer in the principal amount of $28,037.52. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The court will deny defendant's motion.

## FACTS

On April 3, 1992, debtor filed for bankruptcy protection under Chapter 11. Prior to filing, debtor purchased goods on multiple occasions from CCC. However, in March of 1991, CCC stopped accepting orders from debtor, although it continued to ship goods for orders placed by debtor prior to March of 1991. That same month, CCC agreed to accept orders and sell goods to World Bazaar

Ltd. ("WB Ltd."), a related entity to debtor with the same delivery address. One purchase order, number 262–000, was for Christmas goods to be delivered in August of 1991. Under the terms set forth in the purchase order, payment was due on December 10, 1991.

On or about December 31, 1991, CCC received check number 6550 in the amount of $28,037.52 from debtor's account. Upon receiving this payment, Ted Lamar of CCC contacted Ronald W. O'Dell who represented himself to be Executive Vice–President for both WB Ltd. and debtor. O'Dell informed Lamar that certain goods shipped to WB Ltd. pursuant to purchase order No. 262–000 were taken by debtor and that check number 6550 should be applied as payment for said purchase order. Subsequently, Lamar applied the subject payment to purchase order No. 262–000.

On September 25, 1992, William G. Hays, as examiner for debtor in its Chapter 11 case, filed Adversary No. 92–6852, *Hays v. WB Ltd., et al.*[1] (Exhibit "A" to debtor's statement of additional undisputed facts). The examiner asserted four counts against WB Ltd. as follows:

(1) a $102,131.42 claim under Count I for unpaid merchandise delivered to WB Ltd.;

(2) a $146,911.59 claim under Count II for merchandise delivered to WB Ltd.;

(3) a $59,255.46 claim under Count III for royalties due under a management agreement between debtor and WB Ltd.; and

(4) a $50,000 claim under Count IV for management fees.

On May 24, 1993, in connection with that adversary, the examiner entered into a compromise and settlement with the defendants therein. The terms of the compromise and settlement are contained in a document entitled "Settlement Agreement, Mutual Release, and Covenant Not to Sue" ("Agreement"). (*See* Exhibit "A" to CCC's summary judgment motion). The Agreement referred to the defendants collectively as "WB Partners."

Debtor filed this adversary proceeding to avoid and recover the subject payment to CCC as a preferential transfer pursuant to 11 U.S.C. §§ 547(b) and 550(a). Debtor contends that it is entitled to avoid the subject payment and recover it from CCC as the "initial transferee." Thereafter, CCC filed its motion for summary judgment and statement of material and undisputed facts. Debtor filed a response to CCC's summary judgment motion along with a statement of additional undisputed material facts.

## DISCUSSION

■ Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides for the granting of summary judgment if " ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it " ... might affect the outcome of the suit under the governing (substantive) law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). A dispute of fact is genuine " ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975).

■ In determining whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). The moving party must identify the evidentiary materials listed in Federal Rule

---

1. The defendants in Adversary 92–6852 were as follows: (1) WB Ltd.; (2) Cordova/Bazaar Equities, L.P., general partner of WB Ltd.; (3) Bazaar Equities, Inc. f/k/a Cordova/Bazaar Equities, Inc., general partner of Cordova/Bazaar Equities, L.P.; (4) LC Williams, Inc., general partner of WB Ltd.; (5) Modzelewski, Inc., general partner of WB Ltd.; and (6) D/W, Inc., general partner of WB Ltd.

56(c) which establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed. R.Civ.P. 56(e). If the motion for summary judgment is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, an opponent of the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Coats & Clark,* 929 F.2d at 608.

CCC asserts that the compromise and settlement as set forth in the Agreement bars debtor from any recovery based on the following grounds: (1) debtor cannot recover the subject payment from CCC under § 550[2] because the transfer to WB Ltd. cannot be avoided pursuant to § 547; and (2) alternatively, debtor cannot recover from CCC because debtor is entitled to only one recovery for the benefit of its estate. *See* 11 U.S.C. § 550(c).

Both parties cite *Sims v. De Armond (In re LendVest Mortgage, Inc.),* 123 B.R. 623 (Bankr.N.D.Cal.1991), to support their respective positions. In that case, the trustee of the estate of LendVest Mortgage, Inc. ("LendVest") sought to recover a preferential transfer from the De Armonds. Earlier, the trustee filed an adversary proceeding against LendVest Mortgage Fund II ("Fund II"), which sought a declaration of ownership of certain unrelated notes. After Fund II filed its own bankruptcy case ("Fund II case"), Fund II and the trustee entered into a settlement agreement regarding those notes in which the trustee received several hundred thousand dollars for the benefit of LendVest's estate. As part of the settlement, the trustee agreed to withdraw a claim filed in the Fund II case which specifically related to

the same alleged preferential transfer at issue in the action against the De Armonds.

The *LendVest* court framed the issue before it as follows:

> [w]here the [t]rustee may proceed against either of two parties to recover an avoidable transfer, and one party discharges his liability by settlement as a small part of larger litigation, should the court in a subsequent action against the non-settling party attempt to allocate the settlement or must it give the non-settling party full credit for the entire settlement?

*LendVest,* 123 B.R. at 625. After considering state court decisions involving joint tortfeasors,[3] the *LendVest* court concluded that the rules of joint liability in those cases are applicable to joint liability under § 550(a)(1) and that it is improper to allocate the prior settlement. *Id.* That court held that:

> where a trustee seeks to compromise litigation which includes avoidance matters without prejudicing his rights against third parties who might be jointly liable for the avoided transfer, he must (1) as part of the settlement allocate that portion which is attributable to the avoidance action; (2) give all nonparties to the settlement who might be jointly liable fair notice of the settlement and how it might affect their rights; and (3) obtain a judicial determination that the allocation is made in good faith. . . .
>
> . . . [W]here there has been no allocation and notice at the time of the settlement, in any subsequent avoidance action the defendants may apply the entire amount of the settlement as a credit toward their joint liability with the settling party.

*Id.* at 625–26.

The *LendVest* case is factually distinguishable from the present case. In *LendVest,* a

---

**2.** Section 550(a) provides in pertinent part that: (a) . . . to the extent that a transfer is avoided under section . . . 547 of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
    (1) the initial transferee of such transfer or the entity for whose benefit the transfer was made[.]
11 U.S.C. § 550(a).

**3.** In that analogous situation:

> [w]hen claimants enter into a settlement which fails to preserve or otherwise differentiate settlement sums which pertain to separate causes of action, the total amount of the prior settlement is setoff against the total sum of subsequent verdicts entered against a joint tortfeasor.

*LendVest,* 123 B.R. at 625 (quoting *Dionese v. West Palm Beach,* 485 So.2d 1361, 1363 (Fla. App. 4th Dist.1986), *aff'd* 500 So.2d 1347 (Fla. 1987)).

claim was asserted in the Fund II case which specifically related to the same alleged preferential transfer at issue in the subsequent action against the De Armonds. As part of the consideration for the settlement, the trustee agreed to withdraw said claim. Thus, it appears that the settling parties contemplated and compromised several claims including the specific claim at issue in the De Armond adversary proceeding. In the present case, however, the examiner for debtor asserted no claim in the prior adversary which specifically related to the subject payment. Rather, the examiner asserted various contract claims against WB Partners of approximately $360,000.

CCC contends that pursuant to the Agreement, the examiner released all preference claims against WB Partners, including WB Ltd, as part of the bargain for receiving $60,000 in settlement proceeds from WB Partners. Because § 550(c) limits a trustee to a single recovery, CCC further contends that a second recovery of the alleged preferential transfer is barred.

■ The Agreement expressly provides that it shall be governed and interpreted in accordance with Georgia law. A settlement agreement is a contract, the construction of which is a question of law for the court. *See* O.C.G.A. § 13-2-1; *Topa Ins. Co. v. Acree,* 209 Ga.App. 234, 235, 433 S.E.2d 312 (1993). The Georgia Code provides that:

> [t]he cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.

O.C.G.A. § 13-2-3.

■ Similar to the *LendVest* court, this court finds that state law decisions involving joint tortfeasors are instructive with regard to joint liability under § 550(a)(1). In Georgia, it has been a long standing principal that "[a] general release or a release which contains no reservations, executed in favor of one joint tortfeasor, in full settlement of damages, releases all joint tortfeasors." *Menendez v. Perishable Distributors, Inc.,* 254 Ga. 300, 301, 329 S.E.2d 149 (1985); *see also Zimmerman's Inc. v. McDonough*

*Constr. Co.,* 240 Ga. 317, 319, 240 S.E.2d 864 (1977); *Donaldson v. Carmichael,* 102 Ga. 40, 42, 29 S.E. 135 (1897).

■ However, Georgia courts have modified the strict application of the release principal by giving effect to covenants not to sue. Even though O.C.G.A. § 13-4-81 provides that a covenant not to sue is "equivalent" to a release, the legal effect of a covenant not to sue is distinguished from the legal effect of a release.

> The difference is one of intent and grows out of the construction placed on the terms of the instrument, since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and, although it may operate as a release between the parties to the agreements, it will not release a claim against joint obligors or joint tortfeasors[.]

*Georgia R.R. Bank & Trust Co. v. Griffith,* 176 Ga.App. 198, 199, 335 S.E.2d 417 (1985); *Bevill v. North Bros. Co.,* 168 Ga.App. 97, 98, 308 S.E.2d 215 (1983); *American Chain & Cable Co. v. Brunson,* 157 Ga.App. 833, 837, 278 S.E.2d 719 (1981).

In *Cooper v. Firestone Tire and Rubber Co.,* 599 F.Supp. 172 (S.D.Ga.1984), the district court reviewed Georgia case law which recognized that:

> ... if a plaintiff sought to settle his claim against one joint tortfeasor by accepting less than full satisfaction for his injury, he could still proceed against the other joint tortfeasors by entering into a covenant not to sue the settling joint tortfeasor[.]

*Id.* at 175; *see also Harmon v. Givens,* 88 Ga.App. 629, 634, 77 S.E.2d 223 (1953). Further, "... even though a document may have been denominated a release, if it appeared from the language contained in the document that the parties intended it to be a covenant not to sue, discharging only one tortfeasor, the court would interpret the document as being a covenant not to sue instead of being a release." *Cooper,* 599 F.Supp. at 175 (citing *Smallwood v. Bickers,* 139 Ga.App. 720, 229 S.E.2d 525 (1976)).

In *Posey v. Medical Center–West, Inc.,* 257 Ga. 55, 354 S.E.2d 417 (1987), the Georgia

Supreme Court considered whether to follow the long standing principal that a general release given to one tortfeasor releases all joint tortfeasors. In rejecting this principal, the court held that:

[a] valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others for the same harm, unless it is agreed that it will discharge them ... [and] that the intent of the parties to the release regarding its effect may be proven by external evidence as against a third party.

*Id.* at 59, 354 S.E.2d 417 (citation omitted). Subsequently, the Georgia Supreme Court modified the *Posey* rule by eliminating the need to inquire into the intent of the parties to the release. *See Lackey v. McDowell,* 262 Ga. 185, 186, 415 S.E.2d 902 (1992). The court held that "[o]nly those parties *named* in the release will be discharged by that instrument." *Id.* (emphasis in original). To be released, a party must be "... identified either by proper name or such other description as leaves no question of the identity of [said] party...." *Id.* at 186, n. 3, 415 S.E.2d 902.

 In the present case, the Agreement expressly provides that WB Ltd. and the other defendants in Adversary No. 92–6852 are released from liability with regard to preference claims. CCC, however, was not named or otherwise identified in the Agreement as a party to be released from preference claim liability. Thus, pursuant to *Lackey,* the Agreement does not release CCC from liability as to the alleged preferential transfer.

Even under the *Posey* holding, CCC was not released from liability. The Agreement contains both release and covenant not to sue language. It provides that the examiner and WB Partners agreed and the sums paid were to resolve, compromise, and settle all disputes regarding Adversary No. 92–6852. Further, the Agreement contains a covenant not to sue with regard to all claims listed in the Agreement. These provisions, taken together, evidence an intent to release only the settling parties and that only the WB Partners are released from preferential liability. As such, it appears from the Agreement that the examiner merely covenanted not to sue WB Partners, including WB Ltd., with re-

gard to any preference claims. The court concludes, therefore, that the Agreement is a covenant not to sue and that it does not release CCC from liability as to the alleged preferential transfer.

A preferential transfer is recoverable from either "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Under the literal language of the statute, there must be an avoidable transfer before there can be recovery under § 550. *See Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.),* 939 F.2d 355, 359 (6th Cir.1991). If the elements of § 547(b) are satisfied, then the subject payment may be avoided for the benefit of WB Ltd. and recovered from CCC as the "initial transferee." Thus, as a matter of law, CCC is not entitled to summary judgment. Accordingly, it is

**ORDERED** that CCC's motion for summary judgment is **denied.**

The clerk is directed to serve a copy of this order upon plaintiff's and defendant's counsel.

IT IS SO ORDERED.