In re LENDVEST MORTGAGE, INC., Debtor.

Charles E. SIMS, Trustee, Plaintiff,

v.

Willard and Norma DE ARMOND, Defendants.

Bankruptcy No. 1–88–01058.
Adv. No. 1–90–0134.

United States Bankruptcy Court, N.D. California.

Feb. 4, 1991.

J. Roland Wagner, P.C., Napa, Cal., for defendants.

Steven M. Olson, Geary, Shea, O'Donnell & Grattan, Santa Rosa, Cal., for plaintiff.

## MEMORANDUM OF DECISION

ALAN JAROSLOVSKY, Bankruptcy Judge.

Before its collapse, the debtor operated a mortgage brokerage. Much of its operational financing came from individual investors. In this adversary proceeding, the Trustee seeks to recover as a preference $50,000.00 from defendant investors Willard and Norma De Armond.

In 1986, the debtor made a $300,000.00 loan to its president, David Hansen. The loan was secured by a deed of trust to Hansen's property. The debtor then sold fractional interests in the note and its deed of trust to individual investors; the De Armonds purchased a ⅙ interest for $50,000.00 in July, 1987.

The debtor was the trustee under the deed of trust. In addition, the De Armonds gave the debtor a special power of attorney to manage their investment and sign all papers relating to it.

In January, 1988, Hansen paid off the loan in full; all funds went to the debtor. A full reconveyance executed by the debtor was recorded on January 22, 1988. Instead of paying the De Armonds their share, however, the debtor instead gave them its unsecured note for $50,000.00 and kept the cash for itself.

On May 5, 1988, just a few weeks before the bankruptcy filing, the debtor and the De Armonds entered into a written agreement whereby the debtor's note was deemed paid in full and the debtor transferred $50,000.00 to LendVest Mortgage Fund II ("Fund II"), a limited partnership, on the De Armonds' behalf. This is the transfer alleged to be preferential, along with $920.23 in interest payments.

Earlier in these bankruptcy proceedings, the Trustee brought an adversary proceeding against Fund II, seeking a declaration that he and not Fund II was the owner of certain notes having nothing to do with the De Armonds. Fund II filed its own bankruptcy, and then reached a settlement with the Trustee regarding those notes whereby the Trustee received several hundred thousand dollars. As part of the settlement, the Trustee agreed to withdraw the claim he had filed in the Fund II bankruptcy relating to the same preferential transfer which is the subject of this adversary proceeding.

Only two issues are raised by the De Armonds in response to the Trustee's complaint. First, they allege that the reconveyance of the deed of trust was not authorized and therefore was not effective, so that the transfer in May should be deemed a contemporaneous exchange under section 547(c)(1) of the Bankruptcy Code. Second, they allege that the settlement between the Trustee and Fund II fully satisfied the preference claim which is the subject of this action.

■ The court sees no merit in the 547(c)(1) defense. Any wrongdoing on the part of the debtor is not imputed to the Trustee so as to inhibit his avoidance powers. *In re Davis*, 785 F.2d 926, 927 (11th Cir.1986); *Matter of Intern. Gold Bullion Exchange, Inc.*, 60 B.R. 261, 263 (Bkrtcy.S. D.Fla.1986). Rightly or wrongly, the debtor reconveyed the Hansen deed of trust some four months before the transfer here alleged to be a preference. On May 5, 1988, the estate was diminished by the $50,000.00 transfer to Fund II. It got no new value, as that term is defined in section 547(a)(2), in return.

■ Pursuant to section 550(a)(1), the Trustee is entitled to recover the preference from either Fund II, as the initial transferee, or the De Armonds, the persons for whose benefit the transfer was made. Section 550(c) limits the Trustee to a single recovery, so the total of his recoveries from both on account of the avoided transfer may not exceed $50,920.23. The De Armonds argue that by withdrawing his claim against Fund II as a part of his settlement with it, the Trustee has in essence had his

recovery on the preference which is the subject of this action.

The court does not find persuasive the Trustee's argument that he withdrew his claim against Fund II rather than compromised it. The court must consider the substance of the transaction, not the form. In substance, the Trustee had multiple claims against Fund II, some of which were raised in his adversary proceeding against it and some of which were raised in the proof of claim he filed. By a single agreement, all of the claims were resolved. It is a fiction to argue that some claims were compromised and others were dropped.

On the other hand, it may well be, as the Trustee argues, that the primary thrust of the settlement was resolution of the dispute over who owned certain notes. The Trustee argues that the dropping of the preference claim was a small additional concession to Fund II, made largely because it was not worth pursuing anyway. As far as the court can see, neither Fund II nor the Trustee ever thought about the De Armonds when they negotiated the settlement; certainly they did not intend the settlement to protect the De Armonds.

■ The issue before the court can be stated as follows: Where the Trustee may proceed against either of two parties to recover an avoidable transfer, and one party discharges his liability by settlement as a small part of larger litigation, should the court in a subsequent action against the non-settling party attempt to allocate the settlement or must it give the non-settling party full credit for the entire settlement?

The court has been unable to discover any bankruptcy precedent or authority applicable to this situation, and none has been cited by the parties. However, the court finds helpful a few state court decisions involving joint tortfeasors which are very analogous to the facts now before the court.

In *Nauman v. Eason*, 572 So.2d 982 (Fla.App.1st Dist.), plaintiffs settled with one tortfeasor and proceeded to trial as to another person who was jointly liable on some, but not all, of the causes of action asserted against the party who settled.

After a jury verdict in favor of the plaintiffs, the trial court allocated the settlement between the various causes of action and gave the defendant credit only for those on which he was jointly liable. The appellate court reversed, holding that where the original settlement failed to allocate between various causes of action the defendant was entitled to a setoff of the entire amount of the settlement; post-hoc allocation by the court was error. The court cited *Dionese v. City of West Palm Beach*, 485 So.2d 1361, 1363 (Fla. 4th CDA 1986), aff'd 500 So.2d 1347 (Fla.1987). The court there held:

> When claimants enter into a settlement which fails to preserve or otherwise differentiate settlement sums which pertain to separate causes of action, the total amount of the prior settlement is setoff against the total sum of subsequent verdicts entered against a separate joint tortfeasor.

See also *Knox v. County of Los Angeles*, 109 Cal.App.3d 825, 836, 167 Cal.Rptr. 463 (1980), to the same effect.

After considerable reflection, the court concludes that the same rule should apply to joint liability under section 550(a)(1) of the Bankruptcy Code, and it is therefore improper to allocate the prior settlement as the Trustee urges. While such an allocation appeals to the court's equitable instincts, there are two countervailing considerations. First, allocation of a settlement after the fact would almost certainly be highly arbitrary. Second, it would force the court to try the merits of the settled litigation, thereby defeating a primary purpose of settlement. Public policy is better served by requiring settling parties who do not wish their settlement to inure *in toto* to nonsettling parties to allocate their settlement and give any jointly liable parties fair notice of the allocation and an opportunity to object if they believe it has not been made in good faith.

■ The court accordingly holds that where a trustee seeks to compromise litigation which includes avoidance matters without prejudicing his rights against third par-

ties who might be jointly liable for the avoided transfer, he must (1) as part of the settlement allocate that portion which is attributable to the avoidance action; (2) give all nonparties to the settlement who might be jointly liable fair notice of the settlement and how it might affect their rights; and (3) obtain a judicial determination that the allocation is made in good faith. This procedure, somewhat akin to the procedure for determining the good faith nature of tort settlements vis-a-vis nonsettling joint tortfeasors under state law (California Code of Civil Procedure section 877.6), would afford due process protection to persons who might be jointly liable with the settling party, and would encourage the resolution of all avoidance claims regarding the same transfer at the same time.

The court further holds that where there has been no allocation and notice at the time of the settlement, in any subsequent avoidance action the defendants may apply the entire amount of the settlement as a credit toward their joint liability with the settling party.

For the foregoing reasons, the Trustee shall take nothing by his complaint and this adversary proceeding shall be dismissed, with prejudice. Each side shall bear its own costs.

Counsel for the De Armonds shall submit an appropriate form of judgment forthwith. This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and Bankruptcy Rule 7052.