In re **LENDVEST MORTGAGE, INC., Debtor.**

**Charles E. SIMS, Successor Chapter 11 Trustee for Estate of Lendvest Mortgage, Inc., Appellee,**

v.

**Willard DeARMOND; Norma DeArmond, Appellants.**

**No. 92–16073.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1993.

Memorandum Filed Sept. 12, 1994.

Order and Opinion Filed Dec. 16, 1994.

Jim Roland Wagner, Wagner & Wagner, Napa, CA, for appellants.

Steven M. Olson, Geary, Shea, O'Donnell & Grattan, Santa Rosa, CA, for appellee.

## ORDER

The memorandum disposition filed September 12, 1994, is redesignated as an authored opinion by Judge Wiggins.

---

*Hon. Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting by

Appeal from the Ninth Circuit Bankruptcy Appellate Panel.

Before WALLACE, GARTH *, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

This case involves an adversary proceeding stemming from transactions apparently taken in contemplation of the bankruptcy of Lendvest Mortgage, Inc. ("Lendvest"). The Trustee in bankruptcy of Lendvest seeks recovery of an allegedly preferential transfer to Appellants Willard and Norma DeArmond, who were investors in Lendvest. The Trustee previously settled an action with the recipient of the monies, Lendvest Mortgage Fund II ("Fund II"), that involved claims for the same preferential transfer. Based on its conclusion that the entire settlement with Fund II should be applied as satisfaction for the preferential transfer claim, the bankruptcy court dismissed the adversary proceeding because the Trustee had already recovered once on the claim now asserted against the DeArmonds. *Sims v. De Armond (In re LendVest Mortgage, Inc.)*, 123 B.R. 623 (Bankr.N.D.Cal.1991). The Bankruptcy Appellate Panel ("BAP") reversed. We affirm the holding of the BAP.

## I. JURISDICTION

▪ A motions panel has previously decided that there is jurisdiction to hear this appeal. "While we give deference to motions panel decisions made in the course of the same appeal, this court has an independent duty to decide whether we have jurisdiction." *Schlegel v. Bebout*, 841 F.2d 937, 941 (9th Cir.1988). We agree with the motions panel that we have jurisdiction to hear this appeal.

Section 158(d) of Title 28 provides this court with jurisdiction over appeals from an intermediate review of a decision of the bankruptcy court by either the Bankruptcy Appellate Panel or the district court. We have previously said that the orders of both the bankruptcy court and the intermediate

designation.

appellate tribunal[1] must be final in order for this court to exercise jurisdiction. *E.g., Allen v. Old Nat'l Bank (In re Allen)*, 896 F.2d 416, 418 (9th Cir.1990).

In *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811 (9th Cir.1985), this court established that our appellate jurisdiction generally extends to the reversal of a final bankruptcy court order. " '[W]hen the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order for purposes of [28 U.S.C. §] 1293(b).' " 754 F.2d at 814 (quoting *Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.)*; 689 F.2d 445, 449 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); *accord Bayer v. Nicola (In re Bestmann)*, 720 F.2d 484, 485–86 (8th Cir.1983)). The court explained that such orders are reviewable because "litigation on these causes of action would be completed and the bankruptcy court would have nothing further to do if we reversed the district court." *Sambo's*, 754 F.2d at 814. Moreover, "[w]e are in as good a position to review the bankruptcy court's decision as is the district court. Thus, when we review a district court decision with respect to a final order of a bankruptcy court, we in essence are reviewing the final order of the bankruptcy court." *Id.* (citations omitted).

 Other cases, however, have found that, even though the order of the bankruptcy court may be final, the order of the BAP may not be final under certain circumstances. In instances where the BAP remands for factual findings to clarify a central issue of the case because it cannot resolve the legal questions without further facts, such a remand is not final and not reviewable. *Stanton*, 766 F.2d at 1286–88; *see also Dental Capital Leasing Corp. v. Martinez (In re Martinez)*, 721 F.2d 262, 264–65 (9th Cir. 1983). If the BAP cannot resolve the central issue without further findings, the chances

are that we cannot either, and to take jurisdiction would promote piecemeal appeals. *Stanton*, 766 F.2d at 1287–88.

In this case, any remand would be for new proceedings and factual findings independent of the legal conclusion upon which the bankruptcy court based its decision to deny the trustee any recovery. The BAP concluded that the bankruptcy court erred in its conclusion that the DeArmonds were entitled as a matter of law to an offset equal to the entire settlement. "The central question is a legal one that is clearly potentially dispositive. It involves the very existence of the rule pursuant to which the bankruptcy court would be required to make factual findings on remand." *Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership)*, 2 F.3d 899, 904 (9th Cir.1993), *appeal dismissed*, —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). The order of the BAP is therefore final for purposes of this court's jurisdiction.

## II. ALLOCATION

 The bankruptcy court held that unless there has been a prior notice of the settlement to the jointly liable parties and a judicially approved allocation of the settlement, the jointly liable parties may apply the entire amount of the settlement toward their joint liability. 123 B.R. at 626. The BAP reversed, holding that the bankruptcy court had the ability and an obligation to make such an allocation after the settlement.

We agree with the holding of the BAP. Neither the bankruptcy court nor Appellants provide any truly persuasive federal authority for the rigid rule adopted by the bankruptcy court. The fact that one Florida court has apparently adopted such a rule is of relatively little import to the operation of federal bankruptcy courts. *See Nauman v. Eason*, 572 So.2d 982 (Fla.Dist.Ct.App.1990), *cert. denied*, 583 So.2d 1034 (Fla.1991). The other Florida case cited by the bankruptcy court, *Dionese v. City of West Palm Beach*, 485 So.2d 1361 (Fla.Dist.Ct.App.1986) (per

---

1. For convenience, this opinion refers to the BAP, but other cited or quoted opinions may refer to the district court sitting in review of a bankruptcy court decision. "[T]he finality issue is the same as to both." *T.O. King v. Stanton (In re Stanton)*, 766 F.2d 1283, 1285 n. 4 (9th Cir. 1985).

curiam), *aff'd*, 500 So.2d 1347 (Fla.1987), did not address a question comparable to that involved in this case. In *Dionese*, the claims were identical against both of the jointly liable parties. Naturally, the state supreme court held that the entire settlement with one defendant had to be set off against the recovery against the other defendant. 500 So.2d at 1350. In this case, the settlement with Fund II encompassed many claims for which the DeArmonds were not jointly liable, and the DeArmonds have no equitable right to a setoff of the amounts received for those claims.

The California case cited by the bankruptcy court, *Knox v. County of Los Angeles,* 109 Cal.App.3d 825, 167 Cal.Rptr. 463 (1980), is distinguishable on the same basis. There, the court rejected the factually unsupported argument that the settlement only reflected the claims for which there was no joint liability. The court concluded that "[p]laintiffs' response at most created an issue of fact as to the amount of an offset to which [the non-settling defendants] were entitled." 167 Cal. Rptr. at 469. *Knox* provides no authority for the rule adopted by the bankruptcy court, and is actually contrary to that rule because the California court ultimately remanded for an after-the-fact inquiry into whether an allocation was appropriate. *Id.* 167 Cal.Rptr. at 470.

Outside of the state law authority, the bankruptcy court advanced two policy arguments for its holding. First, an after-the-fact allocation would be arbitrary. Second, the court would be forced to "try the merits of the settled litigation." 123 B.R. at 625. Neither of these arguments supports the bankruptcy court's conclusion.

The first argument rests on the implied premise that the allocation by the parties will somehow be less arbitrary. While this court has never passed on the precise question in this case, it has expressed concern about the general problem. *Slottow v. American Casualty Co.,* 10 F.3d 1355 (9th Cir.1993), warned of the collusive forces at play in these situations. The settling defendant only cares about the total amount of the settlement, but the plaintiff greatly prefers that the settlement be allocated to non-joint liabilities so as to allow the plaintiff to recover more from other defendants. Because of the lack of truly adverse interests, the court said, the parties' allocation is virtually meaningless and may not reasonably reflect the parties' relative liabilities.

Far from deferring to allocations such as these, we view them with considerable suspicion because of the risk that liability may have been allocated for strategic reasons.... We can't blame the [settling parties] for trying to structure the settlement in a manner that best served their interests; but we can't let their allocation bind [the non-settling obligor].

*Id.* at 1359. The bankruptcy court, therefore, was correct to reject the Trustee's arguments that the claims giving rise to joint liability were simply dropped. While we sympathize with the desire to avoid imposing upon the bankruptcy court the substantial burden of finding some sort of fair allocation, delegating that determination to the parties (even subject to judicial approval) when such collusive potential exists may be worse than an arbitrary allocation by the court. It may be inherently prejudicial to the interests of the non-settling parties.

As to the bankruptcy court's other argument, it is apparent that any court approving an allocation of a settlement must delve into the strength of the claims. The merit of the claims and the ability to pay are the primary determinants of settlement value. Moreover, no violence is done to the system by postponing the determination. To require that the allocation be made at the time of settlement would require that every potentially jointly liable party must defend his interest at that time, or suffer the consequences. That means making every settlement subject to a many-sided litigation over the strengths and merits of the claims, even though some potential claims might never be brought. Not only are judicial economies created by involving only those who are actual parties to an action, the adversary process also works much more effectively when the persons involved have a defined, present interest in the outcome.

We therefore agree with the BAP that "[a]ny previous private allocation by the settling parties is of no solace or significance to the non-settling party who has no opportunity to be heard." We also agree with the BAP's conclusion that the bankruptcy court

has no valid reason not to attempt a post-hoc allocation of its own.

We therefore affirm the BAP insofar as it decided that the bankruptcy court must undertake an independent allocation of the settlement before it may conclude that the preferential transfer claim has been completely or partially satisfied.

### III. OTHER CLAIMS

The DeArmonds argue on appeal that they cannot be held liable for the transfer to Fund II because that transaction was actually "for the benefit" of David Hanson or someone other than themselves. We decline to address this issue because it was not decided by the bankruptcy court, and additional factual determinations must be made before a legal conclusion may be reached.

The bankruptcy court held that the Trustee's recovery from Fund II provided a complete defense to the suit to recover any preference to the DeArmonds. 123 B.R. at 625–26. The court at one point stated that the statute provides that "the Trustee is entitled to recover the preference from either Fund II, as the initial transferee, or the De Armonds, the persons for whose benefit the transfer was made." *Id.* at 624. We interpret that as a statement only of the joint liability provisions of the statute, not a conclusion that the liability of the DeArmonds has been established.

As far as we can tell, the bankruptcy court made neither the legal conclusions nor the factual findings necessary for the conclusion that the Trustee was entitled to the requested relief. Before the Trustee may recover, the bankruptcy court must determine (1) that there was a transfer of the debtor's interest in property, *see Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321 (9th Cir.1994), (2) that the DeArmonds were creditors of Lendvest, (3) that the transfer was for the benefit of the DeArmonds, and (4) that the transfer enabled the DeArmonds to receive more than they would have if the transfer had not been made and they collected as Chapter 7 creditors in a liquidation of Lendvest. *See* 11 U.S.C. § 547(b). In order to determine whether the transfer is avoidable, the bankruptcy court will have to take into account the complicated background to this case, including the manipulation of the DeArmonds' investment by Hanson. If the bankruptcy court determines that some amount was preferentially transferred to the DeArmonds, it may then reduce the Trustee's recovery by the amount allocable from the settlement with Fund II, to ensure that there is only one recovery as provided by 11 U.S.C. § 550(c).

The BAP's reversal of the decision of the bankruptcy court is AFFIRMED, and the case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.