In the Matter of PRINCETON–NEW YORK INVESTORS, INC. and Seasons Resorts, Inc., Debtors.

Robert P. Gibbons, Trustee in Bankruptcy, Plaintiff,

v.

First Fidelity Bank, N.A., AHC, Inc. and Eugene Mulvihill, Defendants.

Bankruptcy Nos. 94–25534(RG), 94–25535(RG).
Adversary No. 95–2826(RG).

United States Bankruptcy Court, D. New Jersey.

Nov. 13, 2000.

Sheldon Schachter, Verona, NJ, for Defendant, Eugene Mulvihill.

Hellring, Lindeman, Goldstein & Siegal, by Richard B. Honig, Newark, NJ, for Trustee, Robert P. Gibbons.

Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross by Stuart J. Glick, Newark, NJ, for Defendant, First Union National Bank f/k/a First Fidelity Bank, N.A.

## *OPINION*

ROSEMARY GAMBARDELLA, Chief Judge.

### MATTER BEFORE THE COURT

Before the Court is a Summary Judgment Motion by the Defendant, Eugene Mulvihill ("Mulvihill"), against the Plaintiff, Robert Gibbons, Trustee in Bankruptcy for Princeton–New York Investors Inc. and Seasons Resorts, Inc. The Defendant bases his motion on the theories of election of remedies, judicial estoppel, and *res judicata*, claiming that the terms of a certain Settlement Order require that summary judgment be granted in favor of Mulvihill. Defendant, First Union National Bank

f/k/a First Fidelity Bank, N.A., joins in the motion. In opposition to the motion, Plaintiff argues that the motion is unsupported by the Settlement Order, relevant case law, and statutory provisions. A hearing on this motion was held on September 28, 2000. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

Prior to filing a petition for relief, Princeton–New York Investors, Inc. ("Princeton") financed the acquisition of certain real estate through a $6,000,000 mortgage loan from First Fidelity Bank, N.A., now known as First Union National Bank. *See Gibbons v. First Fidelity Bank, N.A. (In re Princeton–New York Investors, Inc.)*, 199 B.R. 285, 288 (Bankr. D.N.J.1996), *aff'd*, 219 B.R. 55 (D.N.J. 1998).

On August 12, 1994, Princeton and its wholly-owned subsidiary, Seasons Resorts, Inc., (collectively, "Debtors") filed separate petitions for relief under Chapter 11 of the United States Bankruptcy Code. *See id.* at 289.

On October 6, 1994, Robert P. Gibbons was appointed Chapter 11 Trustee for Debtors. *See id.* By Order dated March 11, 1999, the Chapter 11 cases were converted to Chapter 7 cases. On or about March 25, 1999, Robert P. Gibbons was appointed as the interim Chapter 7 trustee in both Chapter 7 cases.[1]

The Trustee filed the initial Complaint in this matter on October 6, 1995. The Complaint was amended on June 19, 1996. In the Amended Complaint ("Complaint"), the Plaintiff alleges that, on September 1, 1988, Mulvihill, along with Robert Brennan ("Brennan"), and Robert Holuba and Stanley Holuba ("the Holubas"), incorporated Princeton–New York Investors, Inc. ("Princeton") and purchased a hotel property, the former Playboy Hotel property in Vernon, New Jersey, consisting of a 678 room hotel situated on 577 acres of land, including a 27 hole golf course. The financing was provided in part by a $6,000,000 first mortgage loan from First Fidelity Bank, N.A. ("First Fidelity"), now known as First Union National Bank ("First Union"), which was personally guaranteed by Mulvihill, Brennan, and the Holubas. On November 14, 1990, Princeton sold a golf course and adjacent land to an investor for the amount of $20,000,000. Pursuant to that transaction, the Plaintiff alleges that $4,000,000 of the sale proceeds were allocated toward the payment and satisfaction of, not Princeton's indebtedness to First Fidelity, but the indebtedness of other non-debtor obligations to First Fidelity. Mulvihill allegedly served as a director and chief executive officer of Princeton, and through this position, it is alleged, he was able to effectuate this transaction without the knowledge or consent of Princeton's creditors.

Mulvihill remained in control of Princeton until April 1991, when the Harriman family purchased Princeton's common stock. By July 27, 1994, $4,200,000 was due on the First Fidelity loan, and the loan was in default. Thereafter, it is alleged, Mulvihill created AHC, Inc. ("AHC") for the purpose of acquiring the First Fidelity loan. On July 27, 1994, approximately two weeks before the debtors filed their petitions, AHC purchased First Fidelity's

---

1. On October 23, 2000, the United States Trustee filed a Report of Election of Chapter 7 Trustee in both cases. In that report, the United States Trustee states that: "In Seasons, creditors seeking to elect a trustee failed to meet the requirements of § 702(a) and therefore, Mr. Gibbons shall remain as the trustee pursuant to § 702(d)." *Id.* The report further states: "In Princeton, creditors seeking to elect Mr. [Gary] Marks [Esq.] met the requirements of § 702(a), and therefore, the court should enter the proposed Order Approving Election of Trustee." As of the date of this Opinion, there is an Objection to the Report of Election and Request for Hearing filed on November 1, 2000 by Robert P. Gibbons, Interim Trustee for Princeton. Hearings shall proceed separately on this matter.

rights to the loan and security agreement with Princeton for $3,500,000, despite the outstanding principal balance of $4,200,000. Consequently, First Fidelity released the principals of Princeton from their personal guarantees.

Subsequently, the Trustee filed the initial Complaint on October 6, 1995 and a Second Amended Complaint on June 19, 1996. In Counts One and Two of the Amended Complaint ("Complaint"), Plaintiff alleges that the transfer to Mulvihill constitutes a voidable fraudulent conveyance pursuant to 11 U.S.C. § 544 and the New Jersey Fraudulent Transfer Act ("NJFTA"), encoded at N.J.S.A. § 25:2–1, et seq. Accordingly, Plaintiff requests that the Court: (1) nullify and set aside First Fidelity's application of the $4,000,000 from the sale of Princeton's golf course to the debts of non-debtors, (2) direct First Fidelity to return to the debtor the $4,000,000 with interest, (3) award damages against the defendants, including Mulvihill, to the extent they benefitted from the improper application of Princeton's monies, and (4) award counsel fees and costs. In Counts Three, Four, and Five, the Plaintiff seeks to have the Court: (1) declare that AHC is not a secured creditor of Princeton, (2) direct that the AHC mortgage be canceled, (3) transfer to plaintiff the secured claim allegedly held by AHC, or alternatively, subordinate AHC's claim to the claims of Princeton's unsecured creditors, and (4) award counsel fees and costs.

In October 1998, the Trustee filed a motion for entry of an order approving a certain Settlement that resolved certain disputes. The Settlement Order ("Settlement Order") was approved and entered by this Court on December 10, 1998. The Settlement Order provided in relevant part:

1. The settlement between Robert P. Gibbons and Sovereign, described in the Term Sheet and Verified Application, except as modified by this Order, is approved. However, the Trustee's request in the Verified Application for a carve-out from the Excess Remaining Proceeds is denied.

2. Sovereign and the Trustee expressly reserve all rights and causes of action each may have against other persons, including AHC, First Union, Chicago Title Insurance Company, Old Republic National Title Insurance Company, Mohawk Title Company, Gene Mulvihill, and the Harriman Interests, and against parties in the following Adversary Proceedings currently pending in the united States Bankruptcy Court for the District of New Jersey: (i) *Robert P. Gibbons v. Robert Holuba, et al.*, Adversary Proceeding Number 95–2536; (ii) *Robert P. Gibbons v. William Rich et al.*, Adversary Proceeding number 95–2535 (the "Rich Litigation"); and (iii) counts One and Two in an adversary proceeding entitled *Robert P. Gibbons v. AHC, Inc. et al.*, Adversary Proceeding Number 95–2826 (the "First Mortgage Adversary Proceeding"); *provided however*, the Angela Holuba Term Trust, Stanley J. Holuba and Robert J. Holuba, and each of their respective trustees, officers, relatives, affiliates and successors reserve all rights, claims and defenses against the Debtors or the Trustee, and the settlement and this Order are each without prejudice to such rights, claims and defenses.

3. Sovereign, as successor in interest to First Dewitt Bank, is the absolute assignee and holder of a mortgage note in the principal amount of Six Million Dollars given by Princeton to First Union on September 1, 1988 (the "Princeton Mortgage Note").

4. Except as set forth in ¶ 8 hereof, Sovereign, as successor in interest to First Dewitt Bank, is the absolute assignee and holder of a mortgage given by Princeton to First Union on

September 1, 1988 to secure the Princeton Mortgage Note (the "First Mortgage").

5. The First Mortgage was, prior to the Trustee's sale pursuant to 11 U.S.C. § 363, a valid first priority lien and mortgage on the approximately 42.77 acre parcel of real property located in Vernon Township, New Jersey owned by Princeton on which the Seasons Resort & Conference Center is located (the "Hotel Property"), and is now a valid first priority lien and mortgage on the Remaining Proceeds (except to the extent partially avoided and preserved for the benefit of the estates in ¶ 8 of this Order). Remaining Proceeds shall mean the proceeds of the Trustee's sale pursuant to 11 U.S.C. § 363 of the Hotel Property less disbursements made in accordance with the Bankruptcy Court's Orders entered on November 25, 1997 and December 7, 1997 in which the Trustee was authorized to disburse approximately $6,200,000 to: (i) holders of tax claims and tax lien certificates; (ii) certain professionals; and (iii) Seasons Investment Corporation and AFP Financial Corp., two post-petition lenders.

6. Sovereign's interest in the Hotel Property and Remaining Proceeds (except to the extent partially avoided and preserved for the benefit of the estates in ¶ 8 of this Order) by virtue of the Princeton Mortgage Note and the First Mortgage, is free and clear of any defense, offset or counterclaim by the Debtors' Estates and any creditor or any person. All other liens, encumbrances and claims of any kind and held by any person are divested from the Remaining Proceeds.

7. The Trustee shall disburse to Sovereign from the Remaining Proceeds the sum of $1,100,000 free of any claim, offset or deduction of any nature asserted by any entity. Any portion of the Remaining Proceeds in excess of the $1,100,000 to be paid to Sovereign is defined as the "Excess Remaining Proceeds".

8. Sovereign's right, title and interest in the Excess Remaining Proceeds is: (i) avoided by the Trustee and transferred to and preserved for the benefit of the Debtors' Estates pursuant to 11 U.S.C. § 544, N.J.S.A. 25:2–1 and 25:2–2 and 11 U.S.C. § 551; and/or (ii) equitably subordinated and transferred to the Debtors' Estates pursuant to 11 U.S.C. § 510(c).

9. Counts Three, Four and Five of the First Mortgage Adversary Proceeding are dismissed with prejudice and as to AHC only, Counts One and Two of the First Mortgage Adversary proceeding also are dismissed with prejudice. The Trustee may continue to prosecute the First Mortgage Adversary Proceeding against First Union and Mulvihill as to all matters in the First and Second Counts only. Notwithstanding anything in this Order or the Term Sheet to the contrary, First Union's and Mulvihill's right to move to dismiss first Mortgage Adversary Proceeding shall not in any way be prejudiced by the entry of this Order, nor shall the entry of this Order be deemed to be any determination of the right or ability of the Trustee to continue to prosecute the First Mortgage Adversary Proceeding as against First Union or Mulvihill.

10. The adversary proceeding entitled *AHC v. Mountainview Resorts Associates et al.*, Adversary Proceeding Number 95–2520, is dismissed with prejudice and without costs to any party; except that the dismissal of the adversary proceeding shall not preclude any party to the adversary proceeding from refiling against another party to the adver-

sary proceeding *in personam* counterclaims or cross claims previously filed in the adversary proceeding.

11. The Trustee's interest in the Excess Remaining Proceeds does not constitute a lien on the so-called "Tandem Rooms"; provided, however, subject to the rights of Sovereign set forth in this Order, the Trustee does not waive or release any claim to the Tandem Rooms, as such claims are more fully set forth in the Rich Litigation.

12. To the extent the automatic stay is applicable, Sovereign is granted relief from the automatic stay provisions of section 362 of the Bankruptcy Code to permit Sovereign to foreclose the First Mortgage against the Tandem Rooms.

13. Sovereign shall dismiss with prejudice the Sovereign Appeal. Each party shall bear its own costs associated with the Sovereign Appeal.

14. Sovereign shall assign to the Trustee without recourse, representation or warranty of any kind, any lien it holds or may claim to hold, now existing or hereafter arising, in any personality of the Debtors' Estates.

15. Sovereign shall be entitled to assert a general unsecured claim against Princeton's estate for the difference between the amounts due and owing Sovereign pursuant to the terms of the Princeton Mortgage Note and the amount of cash (i.e., $1,100,000) to be received by Sovereign from the Debtors' Estates pursuant to this Order.

16. This Order and the settlement shall be binding upon the Trustee, the Debtors' Estates, all creditors, parties in interest, claim holders of or against the Debtors' Estates, Sovereign, and any successor or assign of the foregoing, including, but not limited to any subsequently appointed Chapter 7 Trustee; provided however, the entry of this Order shall not be binding upon nor prejudice, affect, release or limit any rights, claims or defenses of (a) Chicago Title Insurance Company to claims of Sovereign in respect of the title insurance policy Chicago Title issued to Sovereign's predecessor First DeWitt Bank or in respect of the Tax Proceeds (as defined in Chicago Title's objection), (b) Old Republic Title Insurance Policy to claims of Sovereign in respect of the title insurance policy Old Republic issued to Sovereign's predecessor First DeWitt Bank or (c) the Harriman Interests in respect of the title insurance policy referred to in subpart (a), Tax Certificate Proceeds and/or the Tandem Rooms (as defined in the Objections filed by the Harriman Interests dated November 3, 1998).

Settlement Order of 12/10/98 at 4–10, ¶¶ 1–16.

Under the provisions of Paragraph Nine of the Settlement Order, "Counts Three, Four, and Five of the First Mortgage Adversary Proceeding are dismissed with prejudice and as to AHC only, Counts One and Two of the First Mortgage Adversary proceeding also are dismissed with prejudice." Pursuant to Paragraphs Seven and Eight of the Settlement Order, $1,100,000 of the remaining sale proceeds held in escrow were paid to Sovereign Bank (AHC's assignee), and the "excess remaining proceeds," or $900,000, were avoided and/or subordinated in favor of and preserved for the benefit of the estates and paid out on account thereof to the Trustee.

### Defendant's Motion for Summary Judgment

The Defendant notes that the Settlement Order dismissed Counts Three, Four, and Five of the Complaint "with prejudice." *See* Brief for Defendant at 3. The three dismissed Counts sought judgment declaring that AHC was not a se-

cured creditor, canceling the AHC mortgage, and transferring all of AHC's right, if any, to the Plaintiff. *See id.* at 4. It is well-established that a "[d]ismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir.1972) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Therefore, the Defendant argues that the Settlement Order "operated to adjudicate the opposite: namely that AHC was a secured creditor holding a valid mortgage and denying on the merits any claims of invalidity by the Plaintiff relative thereto." Brief for Defendant at 4. The Defendant clarifies that his position is that the Settlement Order:

> *adjudicated* that the only invalidity of or impropriety as to the AHC mortgage was to the extent of $900,000 and the remaining aspects of the AHC mortgage were valid, legal and binding on the Plaintiff. Thus the Plaintiff voluntarily elected to limit all claims of impropriety as to the Fidelity and AHC transactions to a maximum of $900,000 for which he [Plaintiff] has been fully paid.

*Id.* at 6 (emphasis in original). Accordingly, the Defendant contends that he is entitled to Summary Judgment because the First and Second Counts of the Complaint are barred under the doctrines of election of remedies, judicial estoppel, and/or res judicata. See *id.* at 8–12.

The Defendant argues that the dismissed Third, Fourth, and Fifth Counts of the Complaint incorporate by reference the allegations of the First and Second Counts as if set forth fully thereunder. *See* Complaint at 11, 12, and 13, ¶¶ 32, 34, and 37. Consequently, the Defendant argues that this Court's December 10, 1998 Order of "dismissal with prejudice" is the equivalent of a judgment on the merits and operates as *res judicata* as to all fact and allegations averred in the First and Second Counts of the Complaint. *See* Brief for Defendant at 3, 10–12.

**Plaintiff's Reply**

The Plaintiff argues that he is not precluded from pursuing Counts One and Two of the Complaint for several reasons. *See* Brief for Plaintiff at 5. First, the Plaintiff asserts that he can proceed under 11 U.S.C. § 550 because the Defendant benefitted from the improper application of the first mortgage proceeds to satisfy non-debtor obligations to First Fidelity. *See id.* at 5–8. Second, the Plaintiff argues that the language of the Settlement Agreement and public policy favor the first two Counts proceeding. *See id.* at 8–11. Third, the Plaintiff claims that election of remedies does not apply because Counts One and Two do not require him to assert an inconsistent position as to the facts that form the basis of the remaining counts. *See id.* at 11–14. Fourth, the Plaintiff states that judicial estoppel does not apply to these facts. *See id.* at 15–20. Fifth, the Plaintiff contends that *res judicata* does not apply because there was no final adjudication as to the Defendant's role in the application of the proceeds. *See id.* at 20–21.

## ANALYSIS

### I. Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides in relevant part that summary judgment shall be granted "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Supreme Court has explained that Federal Rule of Civil Procedure 56(c) requires "the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). " 'It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its factual existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In considering a motion for summary judgment, a court must consider the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

## II. Recovery from Multiple Entities

■ The Bankruptcy Code specifically allows a trustee to recover a fraudulent transfer from multiple entities. Section 550 provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550. This is limited by § 550(d) which states, "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." [2] In addition, this Court has previously found that "N.J.S.A. 25:2–30 does not prohibit the Trustee from bringing a single action against all parties who may be liable for fraudulent transfers, and does not require the Trustee to choose among potential defendants." *Gibbons v. First Fidelity Bank, N.A. (In re Princeton–New York Investors, Inc.)*, 199 B.R. 285, 291 (Bankr. D.N.J.1996), *aff'd*, 219 B.R. 55 (D.N.J. 1998). Therefore, the plaintiff is entitled to recover from any combination of entities, as long as there is no double recovery.

In *Sims v. DeArmond (In re Lendvest Mortgage, Inc.)*, 42 F.3d 1181 (9th Cir. 1994), the court was faced with a situation similar to the one presently before this Court. There, the Chapter 11 Trustee was seeking to recover an allegedly preferential transfer to the Defendants, who were investors in the Debtor. *See id.* at 1182. The Trustee had previously settled an action with the recipient of the monies "that involved claims for the same preferential transfer." *Id.* The Bankruptcy Court for the Northern District of California dismissed the adversary proceeding brought by the Trustee against the Defendants, holding that the Defendants were entitled to full credit for a settlement that the Trustee entered into with the recipient of the monies because they were jointly liable parties. *See id.* The Bankruptcy

---

**2.** Section 550 of the Bankruptcy Code was amended effective October 22, 1994. *See* Pub.L. 103–394, Title II, Sec. 202. Former Section 550(c) is now provided for in Section 550(d).

Appellate Panel ("BAP") reversed. *See id.* The Ninth Circuit affirmed the BAP. *See id.*

There, the bankruptcy court held that unless there had been a prior notice of the settlement to the jointly liable parties and a judicially approved allocation of the settlement, the jointly liable parties may apply the entire amount of the settlement toward their joint liability. *Id.* at 1183. The BAP reversed, holding that the bankruptcy court had the ability and an obligation to make such an allocation after the settlement. *Id.*

The Ninth Circuit held that " 'any previous private allocation by the settling parties is of no solace or significance to the non-settling party who has no opportunity to be heard.' " *Id.* at 1184 (quoting the BAP). Further, the Court stated that "the bankruptcy court must undertake an independent allocation of the settlement before it may conclude that the preferential transfer claim has been completely or partially satisfied." *Id.* at 1185.

■ In the instant case, there has been no finding as to Mulvihill's responsibility or participation in the allegedly fraudulent transfer. Accordingly, the Plaintiff is entitled to pursue the first two Counts of the Complaint in order to determine the extent of Mulvihill's liability, if any, and the damages, if any, his alleged actions may have caused to the estates.

### III. The Language of the Settlement Order

■ Furthermore, the Settlement Order specifically reserved the right of the Plaintiff to continue to pursue his action against First Fidelity (now First Union) and Mulvihill. *See* Settlement Order of 12/10/98 at 4 and 7, ¶¶ 2 and 9. In general, contract principles are used to determine the parties' intent in a settlement agreement. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). When the language of the settlement is clear and

unambiguous, there is no further inquiry. *See Western United Life Assurance Co. v. Hayden,* 64 F.3d 833, 837 (3d Cir.1995) (applying Pennsylvania law); *County of Morris v. Fauver,* 153 N.J. 80, 103, 707 A.2d 958 (1998) (applying New Jersey law).

Here, the language of the Settlement Order is unambiguous. Paragraph Two states in relevant part that, "Sovereign and the Trustee expressly reserve all rights and causes of action each may have against other persons, including AHC, First Union, ... [and] ... Mulvihill ..." Settlement Order of 12/10/98 at 4, ¶ 2. Furthermore, Paragraph Nine of the Settlement Order provides:

> Counts Three, Four and Five of the First Mortgage Adversary Proceeding are dismissed with prejudice, and as to AHC only, Counts One and Two of the First Mortgage Adversary Proceeding also are dismissed with prejudice. The Trustee may continue to prosecute the First Mortgage Adversary Proceeding against First Union and Mulvihill as to all matters in the First and Second Counts only. Notwithstanding anything in this Order or the Term Sheet to the contrary, First Union's and Mulvihill's right to move to dismiss First Mortgage Adversary Proceeding shall not in any way be prejudiced by the entry of this Order, nor shall the entry of this Order be deemed to be any determination of the right or ability of the Trustee to continue to prosecute the First Mortgage Adversary Proceeding as against First Union or Mulvihill.

*Id.* at 7, ¶ 9. Consequently, the specific language of the Settlement Order further supports the conclusion that the Plaintiff may proceed on the first two Counts of the Complaint. The fact that the Settlement Order also reserved Mulvihill's and First Union's right to move to dismiss the First Mortgage Adversary Proceeding is not in and of itself dispositive as to the merits of any such motion.

### IV. Election of Remedies

■ The doctrine of election of remedies is a harsh doctrine which should be

sparingly applied. *See Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 583 F.2d 1273, 1277 (4th Cir.1978), *cert. denied,* 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979). The rule prohibits a party, in asserting his rights, from occupying inconsistent positions "in relation to the facts which form the basis of his respective remedies." *See Abdallah v. Abdallah,* 359 F.2d 170, 174 (3d Cir.1966). *Accord Deerhurst Estates v. Meadow Homes, Inc.,* 64 N.J.Super. 134, 146–47, 165 A.2d 543 (App.Div.1960) (finding that the remedies must be inconsistent and not just concurrent). This theory does not prevent a party from relying on the same facts as the basis for alternate remedies, but it does bar a party from relying on a certain state of facts as a basis of a certain remedy if "inconsistent with and repugnant to another certain state of facts relied upon as the basis of another remedy." *Abdallah,* 359 F.2d at 174–75. *See also Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 185–86, 218–19 (3d Cir.1992) (allowing the plaintiff to pursue a claim for tortious interference with a contract against a third party after the plaintiff reached a settlement with the other party to the contract, but holding that the district court appropriately limited the plaintiff to a single recovery for lost profits where the plaintiff had premised both its antitrust and its torts damages upon its loss of future profits and that plaintiff must elect between recovering under either tort law with any punitive damages or under its antitrust claim with its trebled damages). The purposes of the rule are to prevent double recoveries, forum shopping, and harassment of defendants by dual proceedings. *See Consol. Express, Inc. v. New York Shipping Ass'n, Inc.,* 602 F.2d 494, 525 (3d Cir.1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980) (quoting *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 224, 86 S.Ct. 781, 787–88, 15 L.Ed.2d 709 (1966)). *Cf. Clark v. Associates Commercial Corp.,* 877 F.Supp. 1439, 1449–51 (D.Kan.1994) (holding that a debtor's unsuccessful pursuit of the remedy of replevin did not foreclose his later pursuing the remedy of conversion).

█ In the instant case, election of remedies does not apply. The first two Counts are not inconsistent in relation to the facts which form the basis of Plaintiff's respective remedies. First, the facts relied upon for all of the Counts in the Complaint are identical. Second, while the Settlement Order does, as acknowledged by the Trustee, to a limited extent, recognize the status of the mortgage given by Princeton to First Fidelity, *see* Brief for Plaintiff at 12, it also is not inconsistent with the Plaintiff's allegations that the transfer of the sale proceeds from the golf course to First Fidelity for loans other than the Princeton property mortgage constituted a voidable fraudulent conveyance, at least in the amount of $900,000. Thus, the first two Counts of the Complaint, seeking an award of damages from the alleged fraudulent conveyance, are consistent with the facts underlying the Settlement Order.

Consequently, the Plaintiff should be permitted to pursue Counts One and Two in an effort to determine Mulvihill's liability, if any. There would not be double recovery. Mulvihill was joined personally as a defendant, and he should not avoid personal liability for his alleged actions based on the Trustee's settlement with Sovereign. Accordingly, election of remedies does not apply to bar Counts One and Two of the Complaint because "the second remedy which is pursued following an alleged 'election' is not theoretically irreconcilable with the first, and does not require a claimant to assume a position inconsistent with that which he took in his initial quest for relief." *Newport News,* 583 F.2d at 1277 (citations omitted).

## V. Judicial Estoppel

█ Judicial estoppel precludes a party from arguing a position inconsistent with a position that the party took in a

previous proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Courts focus on the connection between the litigant and the judicial system in determining whether judicial estoppel is applicable. *See id.* (citing *Scarano v. Central Railroad Co.,* 203 F.2d 510 (3d Cir.1953)). In order for the doctrine to apply, a two-part test must be satisfied:

First, is the position of the party against whom estoppel is sought inconsistent with a position it previously asserted in the proceedings? Second, if so, did that party assert either or both of the inconsistent positions in bad faith-i.e., with intent to play fast and loose with the court?

*National Utility Serv., Inc. v. Chesapeake Corp.,* 45 F.Supp.2d 438, 445 (D.N.J.1999) (citing *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 361 (3d Cir.1996)*).*

 The theory of judicial estoppel is inapplicable to the facts before the Court. As to the first part of the test, the Plaintiff is not taking a position inconsistent with a position taken in a prior proceeding or settlement. In the first two Counts of the Complaint, the Plaintiff is seeking damages pursuant to 11 U.S.C. § 544 and N.J.S.A. § 25:2–1, et seq. This is consistent with the Settlement Order that specifically avoided a portion of Sovereign's interest in and to the funds.

 With regard to the second part of the test, there is no bad faith. It has not been alleged, let alone proven, by the Defendant. The party invoking judicial estoppel must prove that any inconsistent argument was due to intentional wrongdoing. *See Ryan Operations,* 81 F.3d at 362 (citations omitted). For example, in *National Utility,* the court found a party's inconsistent positions to be "suspect," however, the court concluded that the assertion was not made in bad faith. *See* 45 F.Supp.2d at 445. "[J]udicial estoppel does not apply 'when the prior position was taken because of a good faith mistake

rather than as part of a scheme to mislead the court.'" *Ryan Operations,* 81 F.3d at 362 (citations omitted). *Cf. Oneida,* 848 F.2d at 419 (holding that judicial estoppel applied without expressly discussing the intent element; the court found that knowledge of a claim and motive for concealment, coupled with an affirmative duty to disclose, were sufficient to infer intent). Therefore, judicial estoppel does not prevent the Plaintiff from pursuing Counts One and Two of the Complaint in order to determine the extent of Mulvihill's liability for the fraudulent transfer.

## VI. *Res Judicata*

 Bankruptcy courts employ the common rules of *res judicata. Lewison Bros. v. Washington Sav. Bank (In re Lewison Bros.),* 162 B.R. 974, 981 (Bankr. D.N.J.1993). "The doctrine of res judicata, now generally known as claim preclusion, bars relitigation of causes of action that have already been before a court, as long as certain conditions are met." *See Bernard Haldane Assoc., Inc. v. Harvard Prof'l Group,* 185 F.R.D. 180, 181 (D.N.J. 1999). As this Court stated in *Lewison Brothers,* "[a]pplication of res judicata requires: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same causes of action." 162 B.R. at 981 (citing *Purter v. Heckler,* 771 F.2d 682, 690 (3d Cir.1985); *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir.1984); *Goel v. Heller,* 667 F.Supp. 144, 149–50 (D.N.J.1987)).

 The Third Circuit addressed an issue similar to the issue presently before the Court in *Bandai Am. Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3d Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). In that case, the plaintiff sought to reopen the settlement of a copyright dispute. *See id.* at 72. The plaintiff's action was brought against the other party to the settlement and a party which was not a party to the settlement. *See id.* The District Court for the District of New Jersey granted summary judgment in favor of both defen-

dants, "assum[ing] that the action against [the party which was not a party to the settlement was] barred by the settlement and judgment in the first action." *Id.* at 74. The Third Circuit affirmed but on different grounds. *See id.* at 75.

The Third Circuit began by stating that, "[s]ettlement agreements involve claim preclusion [res judicata], not issue preclusion [collateral estoppel]." *Id.* at 74 (citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505–06, 73 S.Ct. 807, 808–09, 97 L.Ed. 1182 (1953)). The court continued, "[i]n subsequent litigation between the parties to a settlement agreement resulting in a consent decree, litigation of issues resolved in the agreement is precluded." *Id.* (citations omitted). However, the court found that this rule is inapplicable to a party that was not a party to the settlement agreement and which party was expressly excluded from the release that the agreement contained. *See id.* at 75. Therefore, the court concluded that the party that was not involved in the settlement could not "use the settlement agreement or the judgment as a basis for estopping [one of the parties involved in the settlement] from pursuing the causes of action pleaded against it." *Id.*

Accordingly, *res judicata* does not apply to the present case. Although, the Settlement Order has the same claim preclusive force as a judicial decree, the second element is not satisfied because the Defendant was not a party to the settlement agreement; the settlement agreement was between the Plaintiff and Sovereign. *See Bandai*, 775 F.2d at 74. The Settlement Order dismissed Counts Three, Four, and Five against all defendants, and Counts One and Two against AHC only. *See* Settlement Order of 12/10/98 at 7, ¶ 9. There was no adjudication as to Mulvihill or First Fidelity. Additionally, the Settlement Order specifically reserved both the Plaintiff's and Sovereign's rights against all other persons. *See id.* at 4, ¶ 2. Therefore, the Plaintiff is permitted to proceed against the remaining defendants on Counts One and Two of the Amended Complaint.

## VII. Public Policy

In addition, public policy favors compromises and settlements entered into for the benefit of the estate. *See Thomas v. Fallon (In re Chicago Rapid Transit Co.)*, 196 F.2d 484, 490 (7th Cir.1952). The Supreme Court has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), *reh'g denied*, 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968).

## CONCLUSION

For the foregoing reasons, Mulvihill's motion for Summary Judgment is hereby DENIED. An Order in accordance with this Opinion shall be submitted.